IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

JOHN BROSNAN,

    Defendant.

No. CR 10-00068 WHA

**ORDER DENYING MOTION TO SUPPRESS**

## INTRODUCTION

In this prosecution for wire fraud, obstruction of court orders, perjury, and aggravated identity theft, defendant John Brosnan moves to suppress all evidence found in his personal computer or computers. The basis for defendant's motion is that (1) the warrant used to search his computer hardware was issued without a showing of probable cause; (2) the claim that evidence of a crime would be found on defendant's computer hardware was stale by the time the warrant was issued; and (3) that any data that was found on defendant's computer or computers was the result of an illegal order issued by this Court in a previously held proceeding. This order finds that there was probable cause for the warrant. The evidence supporting the warrant was not stale. Accordingly, defendant's motion is **DENIED**.

## STATEMENT

This prosecution was initiated as a result of defendant John Brosnan's involvement in three bankruptcy and civil proceedings brought in the Northern District of California, dating back

to 2006. In the first action, Mr. Brosnan was one of three who filed an involuntary Chapter 7 bankruptcy petition against Don Oberle.[1] Mr. Brosnan's claim in the petition was for two dollars. The bankruptcy court dismissed the petition; the two-dollar claim was determined to be too insufficient a debt to justify an involuntary Chapter 7 bankruptcy proceeding.

Mr. Oberle responded by initiating an adversarial proceeding, seeking an award of $307,488 in actual and punitive damages against the bankruptcy petitioners, including Mr. Brosnan.[2] Mr. Oberle contended that he sustained significant financial losses in the form of attorney's fees, loss of reputation, harm to his credit rating, and lost business due to the petitioners' bad faith bankruptcy claims. The bankruptcy court awarded Mr. Oberle $9,980 in attorney's fees against all three petitioners. Mr. Oberle was represented by Joshua Brysk, an attorney with the law offices of James Schwartz, in the adversarial proceeding.

In the third suit, Mr. Brosnan, filing *pro se*, initiated a civil action assigned to the undersigned judge. Mr. Brosnan alleged perjury and sought punitive damages against Mr. Oberle, Attorney Brysk, Attorney Schwartz, and two other individuals and entities.[3] Mr. Brosnan alleged that Mr. Oberle perjured himself in the earlier adversary proceeding by falsely claiming financial damages in the declaration that he filed during that proceeding. He further alleged that counsel conspired with Mr. Oberle in perjuring himself in the declaration. None of the named parties showed up at the case management conference. An order dated May 1, 2008, dismissed Mr. Brosnan's civil suit for lack of prosecution.

On May 19, 2008, the undersigned received a letter from Mr. Brosnan. The letter stated that he had failed to appear at the case management conference because he had earlier received a letter from Attorney Brysk, informing him that the case management conference had been continued ("the Brysk Letter"). He appended a copy of the Brysk Letter, and asked that the undersigned vacate the May 1 order that dismissed his civil suit. Knowing that there had been no

---

[1] *In re Don Oberle*, Case No. 06-41515 EDJ.

[2] *Oberle v. Whitley et al.*, Case No. 06-04223 EDJ.

[3] *Brosnan v. Oberle et al.*, Case No. 07-04337 WHA.

2

continuance, the undersigned ordered Attorney Brysk to explain himself. Attorney Brysk filed a declaration stating that he did *not* write or authorize the sending of the letter. He further contended that he was not the attorney of record for any of the parties named in the suit, and provided a good and sufficient reason for his non-appearance at the case management conference: he had never been served with process in the matter and had no knowledge of the conference. Attorney Brysk pointed to several facts arguing that the Brysk Letter was not authentic. The signature on the letter was not that of Attorney Brysk. The letterhead had not been used by his law offices for nearly two years by the time it had purportedly been sent to Mr. Brosnan. The letter did not bear the usual footer indicating the location of the digital copy of the letter within the law firm's computer system. Attorney Brysk also pointed out that he had sent Mr. Brosnan correspondence years earlier, and that such letters would have provided Mr. Brosnan with the letterhead that he would have needed in order to forge the Brysk Letter.

An order reopened the case, and scheduled an evidentiary hearing intended to help determine the nature and authenticity of the Brysk Letter. The order asked Mr. Brosnan to bring the original of the Brysk Letter to the hearing. Attorney Schwartz, Attorney Brysk, Mr. Oberle and Mr. Brosnan were all present, and all were representing themselves. When asked to produce the original Brysk Letter, Mr. Brosnan said that he no longer had the original letter. He explained that his custom was to scan the contents of any mail that he received, storing only digital copies while recycling all originals. Mr. Brosnan stated that he had thousands of digital copies of letters stored on his computer, including the Brysk Letter. He then noted that Mr. Oberle was a convicted identity thief, and that he believed that the Brysk Letter had been forged by Mr. Oberle and sent to him. When Attorney Brysk was questioned, he reiterated the points in his declaration, that he had no knowledge of the letter and that it was inauthentic. He also made a point to restate the fact that he had sent Mr. Brosnan correspondence some years back, and that the letters that he had sent might have served as a template to forge the Brysk Letter. Mr. Oberle stated that he had never seen the letter before, and had not heard about its existence until he had been ordered to appear at the hearing.

3

Upon hearing such strongly divergent representations concerning the origin of the Brysk Letter, the undersigned invited Mr. Oberle and Mr. Brosnan to testify under oath. Since Attorney Brysk had already made his representations in a declaration, further testimony from him, under oath, was unnecessary. The undersigned admonished both Mr. Brosnan and Mr. Oberle that, given their earlier statements, someone was not telling the truth and that to lie under oath would result in perjury, a serious offense. Furthermore, the undersigned made clear to both Mr. Brosnan and Mr. Oberle that they had a right to counsel at the hearing, and provided them with an opportunity to obtain representation before making any statements under oath. Both Mr. Brosnan and Mr. Oberle said that they were willing to testify then and there, under oath, without counsel. Mr. Brosnan indicated that he was under the influence of allergy and pain medication, but that he believed that he was thinking clearly and that he wanted to proceed.

The undersigned proceeded to take statements from Mr. Brosnan and Mr. Oberle under oath, and both continued to deny having had anything to do with the creation of the Brysk Letter. The incongruent testimony provided suggested that the only remaining evidence as to the origin of the Brysk Letter was stored on Mr. Brosnan's computer. Accordingly, the undersigned ordered Mr. Brosnan not to tamper with his computer in any way that would interfere with a government investigation into the problem of who created the letter. Mr. Oberle was similarly ordered to preserve any evidence that might pertain to the letter.

An order eventually dismissed the suit on June 20, 2008, as having been duplicative of other proceedings. The testimony provided under oath by Attorney Brysk, Mr. Oberle, and Mr. Brosnan, made it clear that one of the parties had perjured themselves, and the order referred the matter to the United States Attorney.[4]

On August 3, 2009, the government requested the issuance of a search warrant for the person of defendant Brosnan, his home, vehicle, and storage facilities for, *inter alia*, computer devices that could be used in the editing and creation of documents such as the Brysk Letter.

---

[4] In this criminal action, counsel for defendant Brosnan stated early on that his client did not wish to make a motion to disqualify or to recuse the undersigned judge. If such a motion were made, as stated at an earlier hearing, it would be assigned to a separate judge for determination.

4

1  Magistrate Judge Maria Elena James granted both the request, and, nine days later, an extension
2  of the deadline by which the warrant needed to be executed.  On August 14, 2009, the
3  government executed the warrant.  In the instant motion, defendant Brosnan contends that
4  "various computers and hard drives" were seized from defendant's home.  The government
5  wishes to use evidence found on defendant's computer or computers at trial, and defendant filed
6  the instant motion to suppress that evidence.

**ANALYSIS**

8  In support of his motion to suppress, defendant Brosnan claims that (1) the warrant used to
9  search his computer hardware was issued without a showing of probable cause; (2) the claim that
10 evidence of a crime would be found on defendant's computer hardware was stale by the time the
11 warrant was issued; and (3) that any data that was found on defendant's computer or computers
12 was only preserved as the result of an illegal order issued by this Court in a previously held
13 proceeding.  There was probable cause for the search warrant and the evidence in support of the
14 warrant was not stale.  The order issued by this Court, requiring defendant to preserve any
15 evidence related to the Brysk Letter, was proper.

16 **1.  ISSUANCE OF THE SEARCH WARRANT.**

17 Findings of probable cause by magistrate judges are entitled to deference.  "A magistrate
18 judge may issue a search warrant if, under the totality of the circumstances, there is a fair
19 probability that contraband or evidence of a crime will be found in a particular location." *United*
20 *States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994).  The determination as to whether a search
21 warrant should be issued is to be a "practical, common-sense decision" that considers the all of
22 the circumstances laid out in the affidavit requesting the warrant.  *Illinois v. Gates*,
23 462 U.S. 213, 238 (1983).  A reviewing court has a duty "simply to ensure that the magistrate had
24 a substantial basis for concluding that probable cause existed." *Id.* at 238–39.

25 Defendant contends that the affidavit submitted to Magistrate Judge James failed to
26 provide sufficient probable cause to justify the issuance of the warrant.  Defendant asserts that the
27 fact that he missed multiple court appearances, coupled with the fact that defendant was unable to
28 account for the origin of the Brysk Letter, was insufficient to support the assertion that defendant

5

committed perjury when he denied creating the Brysk Letter. The affidavit that was submitted, however, contained much more.

Defendant was known to the California state courts as a vexatious litigant. He had been ordered to pay attorney's fees as a result of a motion contending that defendant had brought an unsuccessful bankruptcy proceeding in bad faith. Defendant had brought other suits in the Northern District where he has failed to make appearances at case management conferences, as he had failed to do at the May 1 conference. Defendant has related stories similar to the one related in his May 19 letter to explain his non-appearances. Under oath, neither Attorney Brysk, Mr. Oberle nor defendant took responsibility for the Brysk Letter, and Attorney Brysk laid out several reasons for believing the Brysk Letter to be inauthentic. After defendant denied any knowledge as to the origin of the letter, the undersigned ordered that defendant preserve any evidence relating to the Brysk Letter. The investigating agent that submitted the affidavit stated that, based on the above information, he believed that defendant created the Brysk Letter for the purpose of prolonging a frivolous lawsuit against Mr. Oberle. The agent noted that the computer equipment used in forging is often stored on the persons, and in the homes or vehicles, of forgers. All this was in the affidavit.

The Ninth Circuit law did not require that the forgery by defendant be *proven* before a search warrant was issued. The requirement was that a magistrate judge must believe that the totality of the circumstances points to a "fair probability that contraband or evidence of a crime will be found in a particular location." 31 F.3d at 834. Considering the totality of the circumstances laid out in the affidavit, the government's assertion that defendant created the Brysk Letter was surely not far fetched. At the June 19 evidentiary hearing, defendant stated that he had scanned the Brysk Letter and stored a digital copy on his computer. Such a statement points to a fair probability that evidence of a crime would be found on his computer hardware. Magistrate Judge James had a substantial basis for concluding that there existed probable cause that defendant was in possession of evidence of a crime. Accordingly, the issuance of the warrant to search defendant's person, home, storage facilities and computer equipment, was proper.

### 2.   STALENESS OF EVIDENCE SUPPORTING THE SEARCH WARRANT.

The Ninth Circuit has held that the facts supplied in support of the issuance of a search warrant must justify a conclusion that "the property which is the object of [a] search is probably on the person or premises to be searched at the time the warrant is issued." *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968). As defendant points out in the instant motion, a bright-line rule for evaluating staleness was rejected in *Durham*: "The length of the time lapse alone is not controlling since even a brief delay may preclude an inference of probable cause in some circumstances while in others a long delay may not do so." *Id.* at 194.

Defendant sent the Brysk Letter to the undersigned on May 19, 2008. Defendant was ordered to preserve any evidence relating to the letter during the June 19 evidentiary hearing. The government sought a search warrant on August 3, 2009. While it is true that some thirteen months had passed before the government sought a warrant to search defendant's person and property, the facts supporting the issuance of the warrant justified the conclusion that defendant was still in possession of evidence relating to the Brysk Letter. One of the reasons why a person computerizes data is that there is longevity in computerized data. Furthermore, defendant had been specifically ordered to preserve any evidence relating to the letter. On May 7, 2009, three months before the warrant was issued and nearly one year after he allegedly received the letter, defendant filed a memorandum of opposition in a separate civil action stating that he had complied with the order to preserve evidence relating to the Brysk Letter. On such facts, Magistrate Judge James' conclusion that the property that was the object of the search was "on the person of" defendant at the time the warrant was issued, was proper.

Defendant cites to *United States v. Greathouse*, 297 F.Supp. 2d 1264, 1273 (D. Or. 2003), for the proposition that a thirteen-month gap between the last known criminal activity of a person and the issuance of a warrant to search that person, would result in an affidavit filled with evidence too stale to support a determination of probable cause. Here, there is no thirteen-month gap between defendant's last known possession of evidence relating to the Brysk Letter and the issuance of the warrant. Three months before the warrant was issued, defendant stated that he had complied with the order to preserve evidence relating to the Brysk Letter. Furthermore, in the

1 June 19 evidentiary hearing, defendant stated that when he receives mail, he scans it, and saves a
2 digital file. Per *Durham*, Magistrate Judge James could have properly concluded that the
3 evidence sought by the government was probably on the person or premises to be searched at the
4 time the warrant was issued. Accordingly, the August 3 issuance of the search warrant was
5 proper.

### 3. LEGALITY OF ORDER TO PRESERVE EVIDENCE.

Defendant Brosnan argues that the order issued by the undersigned during the June 19 evidentiary hearing, that defendant preserve any and all evidence relating to the Brysk Letter, was illegal and tantamount to a seizure of defendant's property. Absent a finding that the order to preserve was illegal, defendant states that any authority that the undersigned had in issuing the order was extinguished when the corresponding civil suit was dismissed.

There was nothing unusual in this Court's order to preserve evidence. If the civil matter had continued on, either with or without an appeal, and had ever gone to trial, then the opposing side would have ordinarily wished to demonstrate that Mr. Brosnan had falsified a letter to the Court. This would have gone to his credibility. An order to preserve evidence in such circumstances would have been entirely normal.[5]

The directive given to Mr. Brosnan explained that he should preserve the evidence so as not to "prejudice the ability of the Court or the parties or the United States Attorney or anyone else, the FBI, to get in there and check it out." (Tr. 37). It is of course true that the explanation given included the possibility of a criminal investigation. It also included the possibility of further civil proceedings. Orders to preserve often occur in civil and criminal matters. There was nothing unusual or excessive in the directions given to Mr. Brosnan. In fact, in responding to the order to preserve, he said: "Not a problem." (Tr. 37). It is worth noting that no appeal was taken

---

[5] It is well established that courts have inherent authority to sanction parties for spoilation of evidence. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 955 (9th Cir. 2006) (where the destruction of computer files was held to have been willful spoliation of relevant evidence). Furthermore, although defendant made an affirmative representation that he maintained digital copies of mail that he received, defendant nevertheless had an ongoing duty to preserve evidence. *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) (generally approving the principle that a party to litigation bears an obligation to preserve evidence).

in the civil matter. The instant motion marks the first time that any challenge to the order to preserve has been raised.

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress is **DENIED**. No facts are in dispute, and therefore an evidentiary hearing is unnecessary.

**IT IS SO ORDERED.**

Dated: June 23, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE